IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TODD FENER, on Behalf of Himself and All Others Similarly Situated, | § § § § | Civil Action No. 3:04-CV-1836-D (Consolidated with |
| Plaintiffs, | § § | Civil Action No. 3:04-CV-1869-D and |
| VS. | § § | Civil Action No. 3:04-CV-2156-D) |
| BELO CORP., et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants Belo Corporation ("Belo"), Robert W. Decherd ("Decherd"), James M. Moroney III ("Moroney"), and Barry Peckham ("Peckham") move the court to reconsider its decision in *Fener v. Belo Corp.*, 2007 WL 1468550 (N.D. Tex. May 18, 2007) (Fitzwater, J.) ("*Fener II*"), denying their motions to dismiss. They request in the alternative that the court certify its decision for interlocutory appeal. Lead plaintiff has filed an expedited motion for class-related discovery and extension to file its class certification reply memorandum. For the reasons that follow, the court denies defendants' motion, and it denies lead plaintiff's motion without prejudice as moot.

I

The court assumes the parties' familiarity with *Fener II* and the court's prior opinion in *Fener v. Belo Corp.*, 425 F.Supp.2d 788 (Fitzwater, J.) ("*Fener I*"). In *Fener II* the court held, in relevant part, that plaintiffs' second amended consolidated

complaint ("complaint") adequately pleaded a strong inference of scienter, at least on the basis that Decherd, Moroney, and Peckham were severely reckless in not knowing that the circulation of *The Dallas Morning News* ("DMN") was significantly overstated and that DMN was recognizing revenue that was not earned, and in reporting substantially inflated DMN circulation figures that caused Belo to report artificially inflated financial results to investors and the market. *Id.* at *6. The court concluded:

> Viewed cumulatively and *in toto,* the complaint at least alleges a strong inference of scienter on the basis that Decherd, Moroney, and Peckham were severely reckless in not knowing that DMN's circulation was significantly overstated and that DMN was recognizing revenue that was not earned, and in reporting substantially inflated DMN circulation figures that caused Belo to report artificially inflated financial results to investors and the market.

*Id.* at *10.

Defendants ask the court to reconsider its decision in *Fener II* based on the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* ___ U.S. ___, 127 S.Ct. 2499 (2007), which was handed down after this court decided *Fener II*. They request that the court reconsider *Fener II*'s scienter analysis under the standard articulated in *Tellabs*, and that it dismiss the actions against them.

II

A

In *Tellabs* the Supreme Court interpreted § 21D(b)(2) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. It held that "[t]o qualify as 'strong' within the intendment of § 21D(b)(2) . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S.Ct. at 2504, 2505. The Court explained that this analysis is comparative in nature. It therefore rejected the Seventh Circuit's approach, in which required only that "the 'strong inference' standard would be met if the complaint 'allege[d] facts from which, if true, a reasonable person could infer that the defendant acted with the required intent.'" *Id.* at 2504 (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602 (7th Cir. 2006)). Instead, a court "must consider, not only inferences urged by the plaintiff, as the Seventh Circuit did, but also competing inferences rationally drawn from the facts alleged." *Id.*

Defendants maintain that, analyzed under *Tellabs*, plaintiffs' complaint does not allege facts that give rise to a strong inference of scienter. They reason that the court correctly analyzed plaintiffs' pleading in *Fener I*, and that when the nonculpable explanations and inferences in favor of defendants are

considered, there is no cogent and compelling inference of scienter. Defendants specifically argue that the dominant inferences that arise from the pleaded facts are that defendants reasonably relied on the honesty of a large number of other persons to provide honest reports of DMN circulation numbers, to manage DMN circulation issues and proper reporting, and to verify DMN Publisher's Statement circulation numbers; they thoroughly and properly responded to the limited information that came to them regarding circulation issues and concerns; and nothing that reached them was of such magnitude as to allow an inference of severe recklessness under the controlling standard.

B

Well before *Tellabs* was decided, this court recognized in *Coates v. Heartland Wireless Communications, Inc.,* 100 F.Supp.2d 417 (N.D. Tex. 2000) (Fitzwater, J.), that to plead a *strong* inference of scienter, a plaintiff must plead a *cogent* inference. As the court explained in *Fener I*, "[a] strong inference of scienter requires the pleading of particular facts that, assumed to be true, constitute persuasive, effective, and *cogent* evidence from which it can logically be deduced that defendant acted with intent to deceive, manipulate, or defraud." *Fener I*, 425 F.Supp.2d at 806 (emphasis added; internal quotation marks and brackets omitted)

(citing *Coates III,* 100 F.Supp.2d at 422).[1] Although the court did not explicitly repeat this requirement in *Fener II*, it did not intend to relax the standard when analyzing plaintiffs' second, rather than their first, amended consolidated complaint. The court recited the standard in *Fener I* and applied it anew in *Fener II*. Accordingly, the decisions in *Fener I* and *Fener II* effectively incorporate the requirement of *Tellabs* that an inference of scienter must be more than merely plausible or reasonable—it must be cogent. And in denying defendants' motions to dismiss, the court in *Fener II* determined that plaintiffs had pleaded a cogent inference of scienter based on severely reckless conduct.

C

Under *Tellabs* an inference of scienter must not only be cogent, it must be at least as compelling as any opposing inference of nonfraudulent intent. Defendants rely on several arguments to

---

[1]The court explained:

> This formulation is not inconsistent with the test for pleading a strong inference of scienter based on severe recklessness. If a plaintiff satisfies the elements of pleading scienter based on severe recklessness, he has perforce alleged facts that constitute persuasive, effective, and cogent evidence from which it can logically be deduced that the defendant acted with intent to deceive, manipulate, or defraud.

*Fener I*, 425 F.Supp.2d at 806 n.17.

contend that plaintiffs have not met this standard.[2]  They argue for several reasons that the complaint does not support a strong inference that Decherd was severely reckless in not knowing sooner that DMN's circulation was overstated, or a strong inference that Peckham was severely reckless.

Unlike the Seventh Circuit in *Tellabs*, which explicitly rejected engaging in an assessment of competing inferences, in *Fener II* this court did not decline to consider defendants' opposing inferences in holding that plaintiffs had sufficiently pleaded a strong inference of scienter.  Based on opposing inferences, the court rejected some of plaintiffs' claims.  But when it came to plaintiffs' allegations of severe recklessness, the court did not discern stronger opposing inferences with respect to scienter.

Some of the arguments defendants advance in their motion to reconsider were in fact the basis for the court's rejection in *Fener I* of plaintiffs' conscious misbehavior claims.  For example, defendants now argue that they properly responded to the concerns and complaints about the artificially inflated circulation numbers by conducting an investigation and taking appropriate remedial measures.  In concluding in *Fener I* that plaintiffs had failed to plead facts in support of conscious misbehavior, the court accepted

---

[2]The court addresses *infra* at § III defendants' contentions that Moroney and Peckham are not tied to any Belo public statements.

the inference that "Belo disclosed [the inflation problems] and took corrective measures." *Fener I*, 425 F.Supp.2d at 815. This argument, however, does not join issue with plaintiffs' allegation of severe recklessness for not publicly reporting accurate circulation figures until 2004, and thus provides no basis for reconsidering the court's decision in *Fener II*. The court therefore denies defendants' motion for reconsideration to the extent based on these arguments.

III

Defendants also attempt to rely on new evidence to dispute plaintiffs' factual allegations, but they do not adequately justify why they could not have made these arguments in their motions to dismiss.

A

Defendants now contend that Moroney never signed a Publisher's Statement during or before the class period, and therefore did not certify any circulation information contained in relevant Publisher's Statements; that although Peckham did sign some Publisher's Statements, he did not sign the Publisher's Statements in 1999, when DMN changed its returnable/non-returnable policy and the other practices at issue were put in place; and Peckham did not succeed Jeffrey Beckley as DMN's Vice President of Circulation, as alleged in the complaint, and therefore did not have direct or primary responsibility for circulation. Defendants also attempt to

refute the inference of severe recklessness by introducing new arguments and evidence regarding the actual magnitude of the overstatements and the relatively minor significance these numbers would have had to advertisers.[3]

B

When a party moves the court to reconsider a decision based on a later binding opinion, the party must at least make one of two showings: it must identify arguments that it made previously that, reconsidered under the new standard, result in a different decision, or it must present new arguments that it was unable to make originally in the absence of the new precedent.  When relying on the second alternative, the party must provide some basis for the court to conclude that the new arguments could not have been made before.  This requirement follows from the rule that "[m]otions for reconsideration are not a vehicle to permit a party to rehash arguments it could or should have made in its initial motion."  *Kimberly-Clark Corp. v. Cont'l Cas. Co.*, 2006 WL 2468712, at *1 (N.D. Tex. Aug. 25, 2006) (Fitzwater, J.) (quoting *Hurt v. Ecolab, Inc.*, 2006 WL 1947791, at *3 (N.D. Tex. July 13, 2006) (Kaplan, J.)).

---

[3]For example, defendants now argue that the reported declines in circulation numbers were attributable to factors other than the overstatements, and that for a variety of reasons advertisers understood that reported circulation numbers were approximate and of uncertain magnitude.  Together, these contentions are intended to suggest that defendants were not severely reckless in failing to report the circulation overstatement before August 2004.

C

The court finds unavailing defendants' contention that "[u]ntil the Court decided that the Publisher's Statements were sufficiently linked to public statements, the fact that Moroney and Peckham did not sign the Publisher's Statements was not an issue," Ds. Reply 3 n.3. *Fener I* explicitly placed in issue plaintiffs' failure to connect defendants individually to an oral or written misrepresentation or omission. *Fener I*, 425 F.Supp.2d at 798. To correct this defect, plaintiffs partly rely in their complaint on Publisher's Statements that Moroney and Peckham allegedly signed. Defendants argued in their motions to dismiss that the Publisher's Statements were not sufficiently linked to public statements, but they did not contest that Moroney and Peckham were signatories to them. The court declines to allow defendants to rely on *Tellabs* to raise a factual deficiency that they could have, but did not, raise in their motions to dismiss.

Similarly, defendants do not explain why they did not assert previously the new arguments intended to refute plaintiffs' severe recklessness theory of scienter. The *Tellabs* standard did of itself not make these arguments more relevant or available. Accordingly, the court declines to grant reconsideration on the basis of these previously available, but unasserted, arguments.

IV

Defendants request that the court certify this case for interlocutory appeal.

To make the requested certification under 28 U.S.C. § 1292(b), the court must be of the opinion (1) that the order involves a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, (3) and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. At a minimum, the court concludes that the second factor is not met because there is not a substantial ground for a difference of opinion.

V

Lead plaintiff has filed an expedited motion for class-related discovery and extension to file its class certification reply memorandum. Specifically, lead plaintiff requests additional, limited class-related discovery, or, alternatively, a short extension of time to file its class certification reply so that it can include testimony from an expert who is unavailable before the reply deadline. On November 16, 2007 lead plaintiff filed its class certification reply, which included a declaration from its expert. Because it appears that lead plaintiff was able to include the expert declaration in support of its reply, the court denies the motion without prejudice as moot. If lead plaintiff can show, however, that the motion has not been mooted by the filing of the

reply and declaration, it may renew its motion within 14 days of the date this memorandum opinion and order is filed.

* * *

Defendants' July 20, 2007 motion for reconsideration or for alternative relief is denied.[4]  Lead plaintiff's November 6, 2007 expedited motion for class-related discovery and extension to file its class certification reply memorandum is denied without prejudice as moot.

**SO ORDERED**.

November 26, 2007.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[4]Defendants also filed on July 20, 2007 a motion for judicial notice.  In view of the reasons on which the court relies to deny defendants' motion for reconsideration, the court denies the motion for judicial notice as moot.